THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* JOHN L. KNUPPEL, Respondent-Appellant.

Fourth District   No. 14832

Opinion filed November 30, 1978.

John E. Grosboll and R. John Alvarez, both of Petersburg, and John L. Davidson, Jr., of St. Louis, Missouri, for appellant.

Thomas L. Brownfield, State's Attorney, of Havana (Robert C. Perry, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

On January 31, 1978, Judge Guy R. Williams entered an order nunc pro tunc finding the respondent, John L. Knuppel, an attorney, to have been in direct contempt of court. At that time, the respondent was fined $500. Subsequently, on February 14, the fine was reduced to $250; all other motions to vacate and set aside the finding of contempt were denied; the respondent appeals. We conclude from this record that the respondent's conduct did not constitute contempt and the judgment and fine are reversed.

The background information is as follows: There was a certain proceeding pending in the circuit court of Mason County entitled "In the Interest of [three named minor children]." In 1975, in proceedings before another judge, the three children had been adjudged to be neglected. The two older children were permitted to reside with their mother subject to visitation and supervision by the county probation officer. The youngest child, then aged two years, was placed under the guardianship of the probation officer with directions to place the child in a suitable home until further order of the court. In September 1977, the probation officer filed a supplemental petition as to each of the children, requesting the appointment of a guardian for each with power to consent to adoption. Judge Williams was the assigned judge in the matter from and after October 13, 1977.

From the date of the supplemental petition until January 1978, there was no substantive activity in the case, no evidence was heard, and the only entries were continuances on a motion to quash a subpoena.

Against that background the matter came on for hearing on the supplemental petition on January 30, 1978, at which time the State's Attorney moved to dismiss the supplemental petition stating to the presiding judge that the parties had reached an agreement by the terms of which the petitions would be dismissed. The two older children were to remain as wards of the court under the guardianship of the Department of Children and Family Services, the youngest child would be under the permanent guardianship of the probation officer, and the matter would be continued generally under the court's supervision and review as might be

necessary. If adoption should later be a matter to be considered, the power to consent to adoption would be the subject of further proceedings and a subsequent petition. Upon being advised of this agreement, the trial judge stated:

> "If that is the agreement, I don't like to do it to be frank. I don't like to do that to [the youngest child] from what I understand about the situation in the past."

Following this statement, there was also a short colloquy between the judge, the guardian ad litem, the State's Attorney, and respondent, concerning the proposed agreement. The judge then made this statement:

> "The Court has to approve that. I will not abandon that petition. I will not do it on my knowledge of this situation. I will hold it in limbo and I won't take any action in it."

The following then took place between the judge and respondent:

> "[RESPONDENT]: Well let me say this Your Honor, as an officer of the court, that there has been no evidence presented here, that I feel if the Court has personal knowledge right at this point, the court should disqualify himself if he can't approve the agreement dealing in at armed [sic] length and I think the record shows here we have considered the thing thoroughly, that we are mature men, we are officers of the court and that we have reached an agreement and an understanding. If the court has specialized knowledge with respect then he should disqualified [sic] himself. He has heard no evidence.
>
> [JUDGE]: I am sorry, but I think I have heard quite a bit. This matter has been in here for quite some time and the probation officer has talked to me. So has the State's Attorney, and I do not—I have not been asked to step down in this case and that is going to be my judgment.
>
> [RESPONDENT]: Well Your Honor you are being asked because you have said now that you considered conversations with the state's attorney and the guardian as evidence.
>
> [JUDGE]: And I am not going to step down at this time."

The judge then questioned the probation officer as to her desires in the matter and about conversations with him outside the courtroom. Respondent objected. The objections may also be characterized as interruptions by respondent as the judge was questioning the probation officer. The judge then made this statement to respondent:

> "[JUDGE]: If this Court does not have the right to question a person like Miss Karl at any time it desires to ascertain what her desires may be I think I have that right as a sitting judge in the matter and I am asking her. She just told me in the hall or she's told me this morning I said I understand they have the matter worked

out in this matter. She said yes I understand also that, but I do not want to give up my rights or my request to that and I am not making any ruling on that Mr. Knuppel. I am just saying as the Court sitting in this matter, having been familiar with it through perhaps not open evidence in court all of the time, but certainly of concern how many times have I talked with the state's attorney and the probation officer on this matter and all I am asking is that I am not going to consent to the withdrawal of that at the present time."

Again respondent interrupted the judge and was told to sit down. The probation officer indicated her willingness to go along with the State's Attorney's motion as to the wardship and guardianship, but apparently did not understand the import of having the petitions dismissed. The judge refused to dismiss the petition as to the youngest child. The judge then terminated the hearing and continued the proceedings as to the one child. The judge made no statement or admonition concerning respondent's actions and did not mention possible contempt proceedings.

On the following day, January 31, 1978, apparently without further proceedings or direct communication with respondent, Judge Williams entered an order nunc pro tunc as of January 30, 1978, adjudging respondent guilty of direct contempt of court by reason of his conduct at the hearing on January 30, 1978, and imposed a fine of $500 to be paid within 72 hours of the date of the order. Respondent received notice by mail of this action. The order set forth the contemptuous conduct as:

"3. That upon the Court's indication of its non-concurrence, as to certain parts of said agreement, the Respondent became quite flushed and patently agitated, began yelling or talking in an unduly loud voice in a completely disrespectful manner by continuously interrupting the Court, even to the extent of preventing the Court from addressing pertinent questions to the Probation Officer, and further became argumentative and demeaning in both his tone of voice and his manner and substance of presentation, all of which unprofessional conduct of said Respondent tended to impede and interrupt the orderly proceedings of this Court and tended to lessen the dignity of this Court."

Thereafter, respondent filed motions to quash the contempt order, for change of venue, and for substitution of judge. The motions were set for hearing on February 14, 1978, at which time the State's Attorney appeared for the People and respondent was represented by his attorney.

Judge Williams at that time acknowledged that the court had committed error as to the amount of the fine. The judge reduced the fine to $250. Next, without permitting argument or evidence, the judge announced that respondent was not entitled to be represented by an attorney in the proceeding. Thereafter, and before the hearing was

terminated by the judge, respondent's attorney asked the judge several questions for clarification of the judge's actions. In response to these questions, the judge (1) stated that he had made the decision to hold respondent in contempt on the morning of January 31, 1978; that is, on the day following the occurrence of the alleged contemptuous acts, (2) reaffirmed his position that respondent was not entitled to be represented by counsel, (3) reaffirmed his position to deny a hearing on the motions, (4) acknowledged that he had not admonished respondent that he was considering contempt proceedings, (5) acknowledged that he had not admonished respondent as to the alleged loud talking, other than to request that he sit down, and (6) acknowledged that he had not checked the record to determine the actual number of respondent's alleged interruptions, but thought there had been five or six.

On February 14, 1978, the court entered its written order reducing the respondent's fine to $250, finding that respondent was not entitled to be represented by an attorney, denying the motions, and setting the appeal bond. Notice of appeal was filed on February 16, 1978.

Although the appellant persuasively argues that there are many procedural deficiencies shown by this record, we deem it unnecessary to discuss the procedure in any detail, for we conclude that the conduct of the respondent, shown by the record, does not constitute contempt of court.

■■ ■ Criminal contempt is conduct which is calculated to embarrass, hinder, or obstruct the court in its administration of justice or to derogate the authority or dignity of the court. We are well aware of the necessity that this court, and indeed, all courts, seriously guard the inherent power to punish for contempt, for such is an essential incident to the maintenance of judicial authority and proper administration and execution of the judicial power. We are likewise well aware of the necessity of protecting a lawyer from sanctions that might be imposed when he vigorously but professionally pursues the representation of his clients and seeks to legitimately, but forcefully, advance the client's interests. Sometimes the line between the two may be difficult to ascertain. Thus, in *People v. Kuelper* (1977), 46 Ill. App. 3d 420, 423, 361 N.E.2d 29, 31, the court noted:

> "It is equally difficult to perceive how an attorney who in good faith is representing his client's interests, and while so doing comports himself in a proper and respectful, albeit forceful, manner toward the court can be deemed to be in contempt. A stand taken by counsel in good faith and in the interests of his client should not ordinarily serve as a basis for a charge of contempt."

This record (we recognize that a reviewing court seldom has all the facts and certainly cannot ascertain from the cold record all of the emotions)

does not show contemptuous conduct but rather is in the category of an attorney emphatically and zealously representing a client. There was no indication prior to the delayed finding of contempt that the trial judge considered the action contemptuous; there were no admonitions; and there is no suggestion that the choice of words or phraseology was a matter designed to embarrass, hinder, or interfere with the orderly proceedings.

The State does point to one statement in the record wherein the attorney said, "I am making my record. You bet your booties." The trial court did not specify this as contemptuous, and we should not, and indeed would not, find it to be so. The phraseology may be inept and even dated but we cannot conclude that it was contemptuous.

The judgment of the circuit court of Mason County is reversed.

Judgment reversed.

GREEN, P. J., and TRAPP, J., concur.