THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *v.* BURTON C. BERNARD, Appellant.

Fifth District No. 78-112

Opinion filed August 31, 1979.

G. MORAN, J., dissenting.

Ray Freeark, Jr., of Freeark, Harvey & Mendillo, of Belleville, for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville (Raymond F. Buckley, Jr., and Martin N. Ashley, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KUNCE delivered the opinion of the court:

Appellant Burton C. Bernard, an attorney, was held in contempt of court and fined $100 during an in-chambers conference in the midst of a jury trial of a products liability personal injury action in the Circuit Court

of Madison County.[1] The contempt finding was based on the supposed violation by Bernard, the attorney for the defendant in the personal injury case, of oral *in limine* orders entered prior to trial. On appeal, he contends that he did not violate the orders in question; that the orders lacked the requisite specificity and clarity for their violation to serve as the basis for contempt; and that his conduct was not wilful, contumacious, nor calculated to embarrass, hinder, or obstruct the trial court in its administration of justice.

We state only those facts necessary for our resolution of the questions raised on this appeal.[2] The plaintiff's complaint alleged that he was injured as a result of the unreasonably dangerous and defective design of a certain Caterpillar tractor manufactured by the defendant. The alleged design defect was the absence from the tractor at the time of its original manufacture and sale, some 17 years prior to the plaintiff's injuries, of any rollover protective structure or protective canopy.

The tractor, originally made to be used as a bulldozer in construction work, had been extensively modified by companies other than the defendant for use as a "Tack Cat," or mobile welding platform used in pipe-laying operations. At the time he was injured, the plaintiff was employed by a contractor involved in pipeline construction. The plaintiff's job was to operate the Tack Cat, which held, and served as a source of power for, welding equipment as welders moved along a pipeline. He was injured when a bolt holding a boom broke, the boom struck a ladder handing from another boom near the operator's seat, and the ladder struck the plaintiff in the back and right shoulder. The bolt, booms, and ladder had all been added to the machine by the plaintiff's employer.

The plaintiff claimed that the flexion injury sustained in the accident combined with a pre-existing condition of scoliosis and kyphosis of his spine to result in a condition called spastic paraplegia. He further contended that had the defendant designed the tractor with a proper protective structure he would not have suffered his injuries.

Prior to trial, counsel for the plaintiff made an oral motion *in limine* that defense counsel be prohibited from inquiring into certain matters, or otherwise bringing them to the attention of the jury, without first obtaining a determination from the court as to relevance and admissibility outside of the hearing of the jury. After a lengthy colloquy among counsel and the court, certain *in limine* orders restricting defense counsel were

---

[1] We have today reversed the trial court's order granting a new trial to the plaintiff in the underlying case, in *Bradley v. Caterpillar Tractor Co.* (1979), 75 Ill. App. 3d 890, 394 N.E.2d 825, filed simultaneously with this opinion.

[2] For a fuller exposition of the facts of the lawsuit out of which the contempt finding arose, see the companion case of *Bradley v. Caterpillar Tractor Co.*

made. The orders were not reduced to writing. The two relevant here provided in essence, as we are able to understand them, that counsel obtain the permission of the court (1) before inquiring as to prior injuries or physical conditions of the plaintiff, other than the kyphosis/scoliosis and injuries to the same part of the body as those in issue, and (2) before arguing that the plaintiff's injury was caused by the modifications made to the machine by someone other than the defendant, or was the fault of someone other than the defendant. When Bernard claimed that the latter order would vitiate his client's principal defense that the actions of others were the sole proximate cause of the accident, and would prohibit him from stating in his opening statement what he expected the evidence to show, the court ruled that "you can talk about proximate cause. You can't say it's a fault of Green Engineering or a company that adapted the boom or whatever." The court subsequently attempted to clarify the order by stating:

"I think you can get in the evidence of what Green did * * * but I don't think there is anything that I can visualize that would permit you prior to your case at least, if ever, * * * in making an argument or statement in front of this jury that the sole proximate cause of the accident is Green Engineering Company * * *."

The court further ruled that the defense would be permitted to develop evidence to support the affirmative defense of assumption of risk on the part of the plaintiff.

During the plaintiff's opening statement, the jury was told that the plaintiff had injured his "back" in the accident in question; that despite the pre-existing condition, he had had "no significant problem" with his back prior to the accident; and that a contractor using the machine had "relatively no control" over what protective devices were on the machine. The plaintiff likewise spoke of his "back" injury on direct examination, and testified on cross-examination that he had told examining physicians that his back had never bothered him before this accident. The expert witnesses who testified for the plaintiff stated that they based their opinions in part on what the plaintiff had told them concerning the absence of any prior injury or disability.

Called as an adverse witness by the defendant, the plaintiff answered in the affirmative, without objection, the following question:

"Mr. Bradley, prior to the day of this accident October 26, 1973, and during the year or so before you had treated with a Doctor Casey, a chiropractor in St. Louis, Missouri for your back had you not?"

Defense counsel then asked the plaintiff a series of questions attempting to establish the defense of assumption of the risk. The plaintiff testified that he knew that the ladder was hanging on the rear boom; that

he was aware of the danger of being hit by falling objects; that he knew that the tractor was equipped with no protective structure to protect against falling objects; that he knew that the bolt holding the front boom in place had broken on a previous occasion; and that he was aware that the boom could "snap out and fall on me." However, he testified, he was not aware of the danger of being hit by the ladder.

Defense counsel then asked:

"And you believe do you not, that your employer should have provided you with protective structure on that Tac Cat to protect that [sic]?"

An objection was sustained, the jury was instructed to disregard the question, and the court and counsel retired to chambers. Counsel for the plaintiff then asked for sanctions against Bernard based on the two questions pertaining to the plaintiff's treatment by a chiropractor and whether he believed that his employer should have provided a protective structure; both, he argued, were in direct violation of the court's *in limine* orders. The court stated:

"All right. That's certainly correct on both counts * * *. I am going to tell Mr. Bernard next time it occurs I will hold him in contempt of court in front of the jury. * * *"

When Bernard asked for a hearing and argument on the merits in response to plaintiff's counsel's request that the jury be instructed to disregard the evidence concerning treatment by a chiropractor, the court immediately responded:

"You can be heard sir, you are now found in contempt of this count. I told you not to bring up any medical unless you're going to come in here and produce evidence that this man had, when he was treating with this chiropractor, an injury to the T-8, T-10 area prior to that. * * *"

When Bernard stated that he could not establish more than what the plaintiff had admitted to, the court stated:

"All right, you're in contempt of court, your fine is $100. The man never admitted to an injury. You know this court's order in limine, and you blurted this out in front of this jury. You're in contempt of this court, sir. * * *"

■■■ In this court, no attempt is made to justify the trial court's action on the basis of the question posed to the plaintiff concerning his belief as to whether or not his employer should have provided a protective device. In light of the apparent abandonment of that possible basis for the contempt finding, and our doubt from our reading of the transcript that it was indeed a basis, it will not be further discussed here.[3] Instead, the

---

[3] It does not not appear in any event to have been a violation of the court's order against arguing that the plaintiff's employer was at fault or the sole proximate cause of the accident.

appellee's brief raises numerous alleged instances of the violation of the *in limine* orders which were clearly not relied on by the court at the time Bernard was held in contempt. These matters are taken from the court's order granting the plaintiff a new trial, entered four months after trial and three months after this appeal was taken. Clearly, the subsequent order cannot serve to justify the earlier action of the trial court. An order imposing sanctions for direct contempt must, taken with the record, show the specific acts upon which it was based. It "must be sustained upon the ground on which it was imposed, or not at all * * *." (*People v. Miller* (1972), 51 Ill. 2d 76, 78, 781 N.E.2d 292, 293; see also *People v. Mason* (1963), 41 Ill. App. 2d 272, 190 N.E.2d 494.) We will, therefore, not respond to any of these arguments by appellee.[4]

■ What we are left to consider, then, is whether the question about prior treatment by a chiropractor was a violation of an *in limine* order, and, if so, whether it formed sufficient basis for a finding of contempt. The court's order, entered before any evidence had been presented, purported to exclude evidence as to prior injuries or physical conditions of plaintiff. The exceptions to the order were stated in terms of the pre-existing kyphosis/scoliosis, and injuries to the part of the spinal column which plaintiff's counsel represented were the only injuries plaintiff was seeking recovery for. As the trial developed, the truth of defense counsel's statement, made during the in-chambers colloquy, that "until the plaintiff's evidence is in it is difficult to argue what it is we ought to be entitled to present", became apparent. Absent an *in limine* order, we think it clear that the question propounded would have been perfectly proper. It was a telling and effective method of impeaching the plaintiff's testimony that he had never had any prior problems with his back. To get him to admit, in effect, that this was not true certainly spoke to the jury about his credibility. In light of the reference to the plaintiff's "back" in his attorney's opening statement and plaintiff's own direct testimony, we do not think that the question could fairly be seen as a violation of the court's order.

Even if we did so see it, however, we do not think that it would justify a finding of contempt in light of the lack of clarity and specificity, and the overbreadth, of the court's *in limine* order, and in light of Bernard's repeated attempts to clarify the boundaries of the order. It was a reasonable interpretation of the court's order to conclude that it was not necessary to approach the bench before asking a question about prior treatment of a condition of plaintiff's back. Nor do we think that Bernard's asking of the question was calculated to embarrass, hinder, or obstruct the court in its administration of justice, or to derogate from its

---

[4] The alleged violations of *in limine* orders which formed the basis for the order granting a new trial are discussed in our opinion in the case on appeal from that order, *Bradley v. Caterpillar Tractor Co.*

authority or dignity, or to bring the administration of law into disrepute, as is required to constitute direct contempt. *(People v. Miller* (1972), 51 Ill. 2d 79, 281 N.E.2d 292.) In fact, it was not until Bernard sought the opportunity to explain his position as to the question that he was summarily held in contempt. An attorney's attempt zealously to represent his client's interests should not ordinarily serve as a basis for a charge of contempt. *People v. Knuppel* (1978), 65 Ill. App. 3d 1022, 383 N.E.2d 244.

Appellee contends that this case is controlled by *People v. Graves* (1979), 74 Ill. 2d 279, 285, 384 N.E.2d 1311, 1314, where the supreme court stated:

"When certain matters are withdrawn from the consideration of the jury, counsel may not, through question or comment, expose the jury to the very matters withdrawn from its consideration, and a summary conviction of contempt based on such conduct is not a denial of due process."

The situation in *Graves,* however, where the court's proscriptions were clear and unambiguous, and the respondent violated prohibitions specifically set out, was a far cry from that in the instant case.

The extraordinary sanction of contempt must be exercised cautiously. As the court said in *People v. Loughran* (1954), 2 Ill. 2d 258, 263, 118 N.E.2d 310, 313:

"The power to adjudge guilt and impose punishment without proof or examination, and without plea, trial or issue exists in no other situation or proceeding. It is an exception to our constitutional guarantees which we would regard as intolerable in any other proceeding or for any other purpose. It is readily susceptible of abuse and fraught with danger not only to personal liberties but to the respect and confidence which our courts must maintain. Although such a power is universally recognized as essential to an orderly and effective administration and execution of justice, it should be exercised with utmost caution * * *."

For the foregoing reasons, the order of the Circuit Court of Madison County holding Bernard in contempt of court is reversed.

Reversed.

KASSERMAN, J., concurs.

Mr. JUSTICE GEORGE J. MORAN, dissenting:

In my opinion this court has no jurisdiction to review this appeal because there was no written contempt order and there were no final oral findings or order of contempt. *People v. Tomashevsky* (1971), 48 Ill. 2d 559.

After the trial judge stated, "You're in contempt of this court, sir," the

judge went on to say, "Until you purge yourself of contempt this trial will not continue." The following then transpired:

"Mr. Bernard: May I have a few moments to consider the situation?

The Court; Yes, you can, sir.

(Whereupon Mr. Richard [*sic*] [Dick] H. Mudge entered the Courtroom)

The Court: Let the record show that counsel for the defendant who was found in Contempt of Court took a forty-five minute recess and obtained Attorney Richard [*sic*] [Dick] H. Mudge to represent him. His Attorney Richard [*sic*] [Dick] H. Mudge is present and wishes to make a motion. Mr. Mudge.

Mr. Mudge: O.K., on behalf of Mr. Burton C. Bernard I move that the Court vacate its Order finding Mr. Bernard in Contempt of Court and, of course, rescinding the fine.

The Court: That Motion will be denied.

Mr. Mudge: Let me add this. The Court having denied the Motion we now move the Court for a statement of preserving this matter for appeal.

The Court: The Court will preserve [*sic*] the matter of the Contempt finding and the fine until the close of this trial, and will also give the Defendant the opportunity to appeal this matter.

Mr. Mudge: I would like to add this. At the conclusion of the trial we may want a hearing before the Court on the factual issues as to whether Burt was in contempt, to perhaps avoid necessity of appeal.

Mr. Bernard: The close of the trial could be in two days.

The Court: Just a second, gentlemen. Mr. Bernard, I don't think you understand, your Attorney has asked for an opportunity to have a hearing on the matter after the trial is completed, that doesn't mean that hour, as I take it. And the Court will grant that request and have a hearing on the matter of the Contempt after the case is concluded and the Court will accommodate counsel for Mr. Bernard, Mr. Mudge, in finding a date for that hearing.

Mr. Mudge: Thank you, Your Honor.

Mr. Bernard: Thank you, Your Honor."

The trial then continued and there were no further hearings on the contempt matter. No written order of contempt was ever entered. However, the appellant appealed from the oral order of the trial judge, even though further proceedings were contemplated before the contempt order became effective.

Since there was no appealable order in this case, we have no jurisdiction to review this appeal.