WALTER S. WELCH, as Trustee, *et al.*, Plaintiffs-Appellees, v. THE CITY OF EVANSTON *et al.*, Defendants-Appellants.

First District (1st Division)   No. 1—88—0040

Opinion filed March 20, 1989.—Rehearing denied April 26, 1989.

Ross S. Welch, of Chicago, for appellants.

Herbert D. Hill, Ellen Szymanski, and Kathleen Brenniman, all of Evanston, for appellees.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiffs, Walter S. Welch, as trustee under trust agreement dated June 28, 1976, and Ross S. Welch, who acted as *pro se* attorney, appeal from three orders entered by the circuit court: (1) contempt order entered November 25, 1986; (2) order imposing contempt sanctions entered September 1, 1987; and (3) order modifying the sanctions entered December 2, 1987, which assessed a fine of $500 and attorney fees of $3,615 against plaintiffs. These orders arose from plaintiffs' failure to comply with a prior court order, entered May 11, 1979, which order was affirmed in *Welch v. City of Evanston* (1980), 87 Ill. App. 3d 1017, 409 N.E.2d 450 (*Welch I*), directing plaintiffs to cease renting a basement apartment unit located in a building owned by plaintiffs at 2533-2537 Hartrey Avenue, Evanston, Illinois (the Hartrey Building). The subject matter of the instant appeal was brought before the circuit court by defendant, the City of Evanston (the City), on a petition for rule to show cause why plaintiffs should not be held in contempt for failing to comply with the 1979 order. The sole issue on this appeal is whether the trial court abused its discretion in finding plaintiffs in contempt and in assessing attorney fees and a fine against plaintiffs. For the following reasons, the judgment of the circuit court is affirmed.

A chronology of events leading up to this appeal provides a background for the finding of contempt and imposition of sanctions. The record indicates that on December 2, 1925, a building permit was issued for the construction of the Hartrey Building as a three-story, 10-unit apartment building. At that time, the 1921 Evanston zoning ordinance was in effect, which would have permitted the construction of a 16-unit building on the lot in question. Although the building permit applied for and issued was for only a 10-unit building, an eleventh unit was built in the basement and rented.

In 1966, the former owners of the Hartrey Building petitioned the Zoning Board of Appeals of the City of Evanston (ABA) for a variance to allow for rental of the eleventh unit. The petition was denied on the grounds that the zoning ordinance in effect in 1966 required a

minimum lot size of 11,600 square feet for an 11-unit building and the Hartrey Building lot did not meet this minimum requirement. As the result of the 1966 ZBA decision, the former owners left the eleventh unit vacant for three years. Then, without any change in the legal status of the eleventh unit, the former owners commenced renting the basement unit once again in 1969.

In 1974, plaintiffs purchased the Hartrey Building and rented all 11 units. In 1976, the City filed a quasi-criminal complaint against plaintiffs seeking elimination of the basement unit. Plaintiffs, in turn, filed an action against the City seeking a declaratory judgment and injunctive relief to prevent the elimination of the basement unit. Predicated on the fact that the original building permit issued in 1925 had been for only a 10-unit building, the trial court held that the basement unit was not a legal nonconforming use. Plaintiffs appealed, and in *Welch I,* this court held that the 1925 application for a building permit for a 10-unit building and the subsequent issuance of the permit for a 10-unit building legally prevented plaintiffs from operating the Hartrey Building as an 11-unit apartment building. Accordingly, the court concluded that because the eleventh unit was not lawfully established at the outset, it could not be a legal nonconforming use. Subsequently, on March 10, 1981, the Illinois Supreme Court denied plaintiffs' petition for leave to appeal as well as their motion for leave to file a motion for reconsideration of the denial.

On March 16, 1981, plaintiffs filed an application for a zoning analysis with the ZBA. Several months later, on June 22, 1981, plaintiffs filed a 22-page document with the ZBA requesting a rehearing of the 1966 ZBA decision on the grounds that the 1966 decision was erroneous on its face and changed circumstances warranted a rehearing. Specifically, plaintiffs alleged the following changed circumstances: (1) scarcity of rental apartments in Evanston; (2) an increase in commercial buildings which raised the demand for rental apartments; (3) the current owner is represented by an attorney while the former owner was not; (4) the ZBA had not been properly informed in 1966 that a 16-unit building could legally have been built on the lot in 1925; and (5) in 1966, the City had offered to allow the eleventh unit if the owner could prove that the Hartrey Building had been built prior to February 16, 1927. Evidence not offered in 1966 would not be offered to establish the construction date.

On July 21, 1987, a hearing was held before the ZBA to determine whether plaintiffs' request for a rehearing should be granted. The ZBA denied plaintiffs' request on the grounds that plaintiffs' petition was merely a restatement of the previously litigated issues.

Subsequently, on September 2, 1981, in total disregard of the *Welch I* ruling, plaintiffs filed a three-count complaint against the City in the circuit court of Cook County, alleging that the "basement apartment was a legal nonconforming use under Illinois law." In the complaint, plaintiffs admitted that their June 22, 1981, request for a rehearing before the ZBA. was a reiteration of the relief requested in 1966. However, plaintiffs requested a declaration that the ZBA decision was erroneous; that plaintiffs had a "clear, legal right to keep, maintain and use" the basement unit; that the zoning requirement was unreasonable and confiscatory as to plaintiffs; and requested the court to reverse the ZBA's decision. The trial court granted the City's motion to strike and dismiss the complaint. Thereafter, the court granted plaintiffs leave to file a second amended complaint, which, on the City's motion, was dismissed with prejudice on the grounds that, based on *Welch I*, the complaint was barred by the doctrines of *res judicata* and collateral estoppel.

Meanwhile, despite the ruling in *Welch I*, plaintiffs refused to desist from renting the basement apartment unit as originally ordered by the trial court on May 11, 1979. As a result, on September 17, 1986, the City filed a petition for rule to show cause why plaintiffs should not be held in contempt of court. Plaintiffs responded that they had not complied with the court's order because they felt that it was erroneous, and they had petitioned the ZBA for a rehearing because of the error. On November 25, 1986, the trial court entered its order directing plaintiffs to comply with the May 11, 1979, court order by vacating the basement unit and abandoning its use as a rental unit within 45 days and finding plaintiffs in contempt. The City's request for sanctions was continued to January 20, 1987, for a hearing. In the interim, plaintiffs filed their notice of appeal which consolidated the appeal from the circuit court's order dismissing plaintiff's complaint on the grounds that it was barred by the doctrines of *res judicata* and collateral estoppel (No. 86—3030) and the appeal from the order finding plaintiffs in contempt (No. 86—3399).

In a Rule 23 (107 Ill. 2d R. 23) order, dated December 14, 1987 (*Welch II*), this court affirmed the dismissal of plaintiffs' complaint (No. 86—3030) and dismissed the appeal of the contempt order (No. 86—3399) on the ground that because no contempt sanctions had been imposed at the time the notice of appeal had been filed, the contempt order was not final and appealable. Thus, this court had no jurisdiction to hear the appeal. Plaintiffs' petition for leave to appeal to the supreme court was denied on June 3, 1988. While the consolidated appeal was pending in this court, the circuit court entered an order

which assessed attorney fees and a fine against plaintiffs as sanctions for the court's finding of contempt.

On appeal, plaintiffs contend that the charge of criminal contempt is improper on the ground that they had acted in good faith when they had refused to follow the 1979 order, directing them to cease renting the basement apartment unit. It is axiomatic that a finding of willful contempt is a matter of fact to be determined by the trial court and it will not be disturbed on review absent a showing of abuse of discretion by the trial court. *People ex rel. Fahner v. Colorado City Lot Owners & Taxpayers Association* (1982), 108 Ill. App. 3d 266, 438 N.E.2d 1273.

Initially, plaintiffs argue that plaintiff Ross Welch, *pro se* attorney, cannot be held in contempt of court for failing to obey a court order when his refusal is based on a good-faith attempt to represent his legal interests by filing a new and different cause of action involving the same parties and subject matter. This argument fails for the fundamental reason that plaintiffs have misinterpreted the basis of the contempt order. Ross Welch, *pro se* attorney, was not found in contempt for his trial tactics or overzealous representation of his client. Rather, Ross Welch and Walter Welch, as plaintiffs, were found in contempt for failing to obey a court order which was subsequently affirmed on appeal. As a result of plaintiffs' misinterpretation, the cases relied upon by them to support their argument that an attorney acting in good faith cannot be found in contempt are inapposite and unpersuasive. See *People v. Siegel* (1983), 94 Ill. 2d 167, 445 N.E.2d 762; *People v. Kuelper* (1977), 46 Ill. App. 3d 420, 361 N.E.2d 29; *People v. Knuppel* (1978), 65 Ill. App. 3d 1022, 383 N.E.2d 244; *People v. Toomin* (1974), 18 Ill. App. 3d 824, 310 N.E.2d 767.

Plaintiffs admit that they purposefully refused to obey the 1979 court order, but argue that they did so in good faith because they believed the court order to be erroneous. Therefore, they should not be found in contempt. We disagree. It is well established that a litigant's disagreement with the court's decision does not excuse that party from the obligation to follow that decision. As stated by the supreme court in *Allendorf v. Daily* (1955), 6 Ill. 2d 577, 589, 129 N.E.2d 673, "Although such decree might be erroneous, nevertheless it is binding as to all matters which might have been decided, [citation] until reversed." In the present case, the 1979 order was affirmed on appeal and plaintiffs were legally obligated to follow the court's decision. For this court to rule otherwise would completely undermine the judicial system.

We further find plaintiffs' reliance on *Ellingwood v. El-*

*lingwood* (1975), 25 Ill. App. 3d 587, 323 N.E.2d 571, and *Storm v. Storm* (1973), 9 Ill. App. 3d 1071, 293 N.E.2d 633, unpersuasive of their argument. In *Ellingwood,* contempt was not even an issue before the reviewing court. In *Storm,* defendant was found guilty of willful contempt of court for failing to pay child support arrearages. Initially, the *Storm* court relied on the general rule that failure to pay alimony or child support made out only a *prima facie* case of contempt and stated that a defendant should be allowed to demonstrate his inability to pay as a defense to the contempt order. Upon finding that defendant had been given such an opportunity, but had failed to demonstrate any inability, the *Storm* court affirmed the contempt order. In analogizing *Storm* to the present case, we find *Storm* more persuasive of the City's position than of plaintiffs' position. Assuming that plaintiffs' refusal to desist from renting the basement apartment unit pursuant to the 1979 order makes out a *prima facie* case of contempt, plaintiffs must show an inability to obey the court's order. There is no such showing in the present case.

Tangential to plaintiffs' good-faith argument is their contention that their conduct in filing a subsequent lawsuit "to show neighborhood changes and to correct an obvious zoning board error" cannot be found willful. Not only do plaintiffs offer no legal authority for their position, the facts belie their claim that they did not act in a willful manner. As stated, plaintiffs do not claim that they were unable to abide by the 1979 court order. In fact, they admit that they purposefully did not obey it. Thus, by their own admission, their refusal to obey the order was intentional and knowing, which, by definition, constitutes willful conduct. (See *Pendowski v. Patent Scaffolding Co.* (1980), 89 Ill. App. 3d 484, 411 N.E.2d 910.) Based on the foregoing, we conclude that the trial court did not abuse its discretion in finding plaintiffs in contempt.

██ █ Plaintiffs next contend that the circuit court lacked jurisdiction to enter its order imposing contempt sanctions after the notice of appeal of the contempt order (No. 86—3399) had been filed. Although plaintiffs are correct in stating that, as a general rule, the trial court is divested of jurisdiction upon filing of the notice of appeal, if the order appealed from is not final and appealable, the notice of appeal neither deprives the trial court of jurisdiction to proceed with the case nor vests the appellate court with jurisdiction to review. *King City Federal Savings & Loan Association v. Ison* (1980), 80 Ill. App. 3d 900, 400 N.E.2d 562.

As stated, *Welch II* was a consolidated appeal, consisting of an appeal from the circuit court's judgment that plaintiff's action was

barred by the doctrines of *res judicata* and collateral estoppel (No. 86—3030) and an appeal from the order finding plaintiffs in contempt (No. 86—3399). In appeal No. 86—3030, this court affirmed the circuit court. However, appeal No. 86—3399 was dismissed on the ground that because no contempt sanctions had been imposed, the contempt order was not final and appealable and jurisdiction did not vest in the reviewing court. Accordingly, the circuit court retained jurisdiction to enter its order assessing fees and a fine against plaintiffs.

Next, plaintiffs contend that the trial court abused its discretion in assessing attorney fees against plaintiffs on the grounds that: (1) the City's "carelessness and mistakes" were the cause of the lawsuit; (2) the attorney who represented the City cannot request fees because she was an employee of the City throughout the litigation; and (3) the affidavit submitted by the City's attorney as evidence of the reasonableness of the fees was insufficient. Under Illinois law, the court's power to punish for contempt is inherent and courts are not strictly bound by the provisions of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 1—101 *et seq.*) or by the Code of Criminal Procedure (Ill. Rev. Stat. 1987, ch. 38, par. 100—1 *et seq.*). Instead, they have the discretion to fashion appropriate remedies to a party's contumacious behavior. (*47th & State Currency Exchange, Inc. v. B. Coleman Corp.* (1977), 56 Ill. App. 3d 229, 371 N.E.2d 294.) Further, a court may properly assess fees as a sanction in a contempt proceeding provided that the fees have been shown to be reasonable by submitting detailed time records to the court. *Fiorito v. Jones* (1978), 72 Ill. 2d 73, 377 N.E.2d 1019; *Village of Lakemoor v. First Bank* (1985), 136 Ill. App. 3d 35, 482 N.E.2d 1014.

First, with respect to plaintiffs' allegation that the City's "carelessness and mistakes" were the cause of the lawsuit, plaintiffs contend that if the ZBA had not made two erroneous decisions regarding plaintiffs' right to rent the basement apartment unit, none of this litigation would have been necessary. We are not persuaded by plaintiffs' argument. In our view, the record clearly indicates that the protracted litigation in this case is solely the result of plaintiffs' refusal to accept the circuit court's and appellate court's determinations that the ZBA was correct and the plaintiffs were wrong.

Second, in contradiction to plaintiffs' contention that the City's attorney cannot request fees, the legislature and courts have recognized the right of municipalities, their agencies and their departments to be awarded attorney fees (*Greater Peoria Sanitary & Sewage Disposal District v. Hermann* (1987), 153 Ill. App. 3d 398, 505 N.E.2d 769; *Greater Peoria Sanitary & Sewage Disposal District v. Kellstedt*

(1985), 130 Ill. App. 3d 1002, 474 N.E.2d 1267) and to be assessed attorney fees (*Savaglio v. Board of Fire & Police Commissioners* (1984), 125 Ill. App. 3d 391, 465 N.E.2d 1065). Accordingly, we find no error on these grounds.

Finally, regarding evidence of the reasonableness of the fees, plaintiffs rely on *Brandel Realty Co. v. Olson* (1987), 159 Ill. App. 3d 230, 512 N.E.2d 85, and *Board of Managers, Colony West Townhome Owners Association v. Bucalo* (1979), 69 Ill. App. 3d 287, 387 N.E.2d 53, to support their contention that the affidavit submitted by the City's attorney was insufficient evidence of the reasonableness of the fees. We find both of these cases factually distinguishable from the present case and unpersuasive of plaintiffs' position.

*Brandel Realty* addressed the question of whether plaintiff's section 2—611 motion (Ill. Rev. Stat. 1985, ch. 110, par. 2—611) for attorney fees was insufficient because it had not specifically alleged which of defendant's pleadings were false and it had not set forth the amount of fees sought. Section 2—611 fees are not at issue in the present case. In *Board of Managers*, plaintiff filed a complaint in small claims court to recover past-due condominium assessments. In addition, counsel for the association filed a petition for legal fees, supported by an affidavit which set forth the provision from the condominium declaration allowing fees in actions for assessments and a contention that the fees totaled $598. No testimony was offered as to how many hours were spent on the matter or any other justification for fees. On appeal, the reviewing court remanded the issue to the trial court to determine the proper amount of fees on the ground that the affidavit contained no specific basis for allowance of fees.

Unlike *Board of Managers,* the City's affidavit in support of fees contains a detailed breakdown indicating the date, nature of work and hours spent as a basis for the fees requested. Further, the orders entered by the court indicated that a hearing was held on the fees at which time plaintiffs had sufficient opportunity to contest the reasonableness of the fees. Because the record contains no transcript of those hearings, this court must presume that the evidence omitted from the record would support the trial court's decision. *Brandel Realty Co. v. Olson* (1987), 159 Ill. App. 3d 230, 512 N.E.2d 85.

For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

MANNING, P.J., and QUINLAN, J., concur.