(No. 48388.—

THOMAS G. O'LEARY, Appellee, v. ROBERT H. ALLPHIN, Director of the Department of Revenue, *et al.*, Appellants.

*Opinion filed Oct. 1, 1976.—Rehearing denied Nov. 12, 1976.*

·William J. Scott, Attorney General, of Chicago (Paul J. Bargiel, Bonny Sutker Barezky, Patricia Rosen, and Imelda Terrazino, Assistant Attorneys General, of counsel), for appellants.

Ditkowsky & Contorer, of Chicago (Kenneth K. Ditkowsky, of counsel), for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

This is a direct appeal pursuant to Supreme Court Rule 302(b) by defendants, Robert H. Allphin, Director of the Illinois Department of Revenue, and Philip Mitchell, manager of the Department's investigation division, from an order of the circuit court of Cook County which found them guilty of contempt and imposed fines and jail sentences for violation of a permanent injunction order. The order in question had restrained them from enforcing sections 9c and 18 of the Cigarette Tax Act (Ill. Rev. Stat. 1973, ch. 120, pars. 453.9c and 453.18) against individuals transporting cigarettes from any other State into Illinois for their own use and not for sale.

The sequence of events leading to this appeal is as follows. On September 2, 1973, Thomas G. O'Leary was arrested by agents of the Illinois Department of Revenue and charged with illegal transportation into Illinois of more than 2,000 non-tax-stamped cigarettes in violation of section 9c of the Cigarette Tax Act (Ill. Rev. Stat. 1973, ch. 120, par. 453.9c). That section prohibits, *inter alia,* the transportation into Illinois, without prior authorization, of a single lot or shipment of original packages containing more than 2,000 cigarettes which have not been Illinois tax-stamped.

The section further provides that, in the event cigarettes are transported on the highways of this State in violation of that section, the vehicle containing the cigarettes and the cigarettes themselves are subject to seizure and confiscation as provided in section 18a of the Act (Ill. Rev. Stat. 1973, ch. 120, par. 453.18a). Section 18 provides that authorized employees of the Department may arrest without warrant any person committing a violation of the Act in their presence and may without a search warrant seize packages of cigarettes which have not been tax-stamped as required by the Act. Ill. Rev. Stat. 1973, ch. 120, par. 453.18.

On March 12, 1974, O'Leary filed a class action in the circuit court of Cook County against defendants Allphin, Mitchell and two agents of the Department alleging that his arrest, the search of his car and the seizure of his property violated various provisions of the State and Federal constitutions. The complaint also sought to enjoin further enforcement of the Cigarette Tax Act against any persons who transport cigarettes without Illinois tax stamps into Illinois for their personal use and not for resale, irrespective of the quantity involved. Following a hearing, the trial court entered an injunction order on April 25, 1974, and an amended injunction order on May 9, 1974, restraining defendants "permanently from directly or indirectly enforcing Section 453.9c and Section 453.18, Chapter 120 Illinois Revised Statutes, against individuals transporting cigarettes into Illinois for their own use and not for sale from any State in the United States." The order further stated "it is this Court's opinion that Section 453.9c does not apply to individuals carrying into Illinois from another State, cigarettes in excess of 2,000 in number for their own use and not for resale", and also provided: "It is not necessary, nor does this Court say Section 453.9c or 453.18 is unconstitutional. This Court says only that Section 453.9c and 453.18 does [*sic*] not apply to individuals carrying into Illinois cigarettes purchased outside of Illinois for their own use and not engaged in the business of selling them."

On June 24, 1974, a petition for instructions was filed in the circuit court by the Attorney General on behalf of the Department of Revenue and its director stating that subsequent to the issuance of the injunction order investigators from the Department of Revenue had observed a substantial increase in the number of people driving automobiles bearing Illinois licenses purchasing cigarettes from Indiana cigarette stands near the Illinois-Indiana border; that signs had been posted in Indiana stating that due to the injunction order there was no longer any limit

to Illinois buyers; that the Department of Revenue had observed and intended to continue to scrupulously observe the letter and spirit of the court's order; that the order had resulted in unexpected effects which made it apparent that "clarifications of the Order are essential so that the Department of Revenue will be enabled to execute the duties imposed upon it by the State Legislature and at the same time to avoid being guilty directly or indirectly of violating this Court's Order"; and that the Department requested the court clarify its order so that the Department would be enabled to determine: (1) possession of what number of cartons of cigarettes would constitute a presumption that the possessor had not purchased the same for his own use; (2) in the event it was ascertained that the possessor of the cigarettes had bought more than one brand of cigarettes would this be *prima facie* evidence that the cigarettes were not purchased for his own use; and (3) would it be permissible for authorized officers of the Department or for the State Police at the Department's request to stop automobiles bearing Illinois license numbers, the drivers of which had been observed purchasing cigarettes in Indiana, and subject them to specified provisions of the Cigarette Use Tax Act providing for arrests, searches and seizures, confiscation and penalties. The trial court denied the petition for instructions and stated: "The only thing I am going to say is obviously I am not going to prejudge any case. I am not going to tell you what is proper or improper, unless I have some full facts in the case before me, in the petition before me, on a contempt or some other actual controversy that may arise." The court stated, however, that "under my judgment, they [Department of Revenue agents] have the right to stop a car to find out how many packages of cigarettes they have, even if it is only one package of cigarettes" and to tell them "that they are going to have to pay a use tax on them."

On November 6, 1975, the Appellate Court for the

First Judicial District announced its decision affirming the permanent injunction order entered by the trial court. In its written opinion, the appellate court construed various provisions of the Cigarette Tax Act and the Cigarette Use Tax Act and held that section 9c of the Cigarette Tax Act was applicable only to persons engaged in the business of selling cigarettes in Illinois who transport into or within the State original packages of cigarettes which are not stamped as required by the Cigarette Tax Act. The court held that "an individual who imports tax-unstamped cigarettes for his own use, regardless of quantity, is not subject to the provisions of the Cigarette Tax Act, but instead is subject to the provisions of the Cigarette Use Tax Act and the tax thereunder." (35 Ill. App. 3d at 229.) Review of the appellate court's decision on leave to appeal granted is presently pending before this court in cause No. 48329, which has been taken under advisement following oral argument at this term of court.

On November 13, 1975, one week after the appellate court's decision was announced, a petition was filed in the circuit court by Thomas G. O'Leary, individually and as representative of a class of persons similarly situated, requesting the court to issue a rule to show cause why the defendants should not be held in contempt of court for willful failure to comply with the trial court's injunction order. Although the petition contained various general allegations that the injunction order had been violated, the only specific violations alleged were: that Alphonse Dobrovolskis, who was not engaged in the business of selling cigarettes, "was accosted on the public highways of Indiana on or about September 2, 1973," and wrongfully arrested and imprisoned; that Daniel Kelly, who purchased no cigarettes of any kind "was subjected to similar abuses as O'Leary and other members of the class"; that Martin Kelly, the father of Daniel Kelly, who had purchased cigarettes for his own use but was not arrested, had been subject to a wrongful search and seizure and had later been

served with a complaint alleging possession of unstamped cigarettes; and that in March of 1975 "the defendant caused CBS to travel on the highways with them and with their mini-camera photographs were taken of the defendants deliberately violating the order of this court."

The defendants filed a response to the petition for rule to show cause which denied all material allegations of the petition and contained supporting affidavits by revenue agents with respect to the cases of Martin Kelly and Daniel Kelly. The affidavit cited the details of the Kellys' arrest for transportation of 727 packages of tax-unstamped cigarettes into Illinois from Indiana and stated that Martin Kelly had admitted he had purchased the cigarettes for fellow employees who paid him 25 cents a carton above his cost.

On December 3, 1975, the trial court issued the rule to show cause, returnable instanter, why the defendants "should not be held in contempt of the court for the alleged failure to comply with the injunction rendered herein." The trial commenced that day. Plaintiff's evidence consisted primarily of testimony concerning matters not specifically alleged in the petition for rule to show cause. However, there was testimony by Daniel Kelly that he was the son of Martin Kelly and was driving his father's car on March 1, 1975, when he was stopped and arrested by Department of Revenue agents while returning from Indiana where his father had purchased 76 cartons of cigarettes. He testified that neither he nor his father had ever been engaged in the business of selling cigarettes and that the purchase had been made by Martin Kelly for his use and that of his family. He also stated that his father had gone to Indiana to buy cigarettes on previous occasions, but he could not remember how many times. Martin Kelly did not testify at the trial.

Alphonse Dobrovolskis, who was named in the petition for rule to show cause and who had verified the petition, was not called by plaintiff as a witness in support

of the petition. However, he was called by the defendants pursuant to section 60 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 60) and testified after having been granted immunity from prosecution. He stated that he was arrested on August 18, 1974, in Illinois after returning from Indiana in possession of between 50 and 54 cartons of cigarettes, of which approximately 10 were different brands. Five cartons were for his own use and the balance were for friends, relatives and neighbors who had given him money to buy cigarettes for them. He testified that he had gone to Indiana to purchase a like quantity of cigarettes at three or four week intervals on about three other occasions. He further testified that he was a retail grocer and had obtained a license to sell cigarettes the day after he was arrested.

There was testimony by three other witnesses who had purchased cigarettes in Indiana, although none of the incidents they related had been alleged in the petition for rule to show cause. Boysie Queen testified that he and his wife, neither of whom smoked, had each purchased five cartons of cigarettes in Indiana and were stopped by revenue agents on their return to Illinois. They were not arrested, but the agents told them they would have to pay a tax on the cigarettes. Upon being so advised, they returned the cigarettes to Indiana and received a refund. James Bingham, a truck driver who made several trips to Indiana every night on his route, testified that he had been stopped on several occasions by revenue agents, although there was no testimony that he had ever been arrested. He stated that on one occasion he had nine cartons of cigarettes in his truck and was given a tax slip indicating he owed a $10.80 tax which was to be mailed in to the Department of Revenue. He further testified that he purchased cigarettes about twice a week but never bought more than 10 cartons per week. Some of his purchases were made for fellow employees with funds they had given him for that purpose. He stated that over a period of

approximately nine months he was observed on as many as 20 occasions by revenue agents. Frances J. Wieczorek testified that on October 15, 1975, she was arrested and her car was confiscated by revenue agents as she was driving back from Indiana where she had purchased 73 cartons of cigarettes consisting of 19 different brands. She stated that she had purchased the cigarettes to store in her freezer for her own use and to give away to friends and relatives. She admitted that when the revenue agent had asked her what she was going to do with all the cigarettes and whether she made 25 cents a carton on them, she had responded, "Well, maybe I do, maybe I don't, but I don't sell them." She further testified that she was sometimes reimbursed for cigarettes she purchased for others.

Robert H. Allphin and Philip Mitchell were called as witnesses by plaintiff pursuant to section 60 of the Civil Practice Act, and they each also testified in their own defense. Allphin testified that as Director of the Department of Revenue he was responsible for administering the revenue laws of the State of Illinois and had helped formulate the enforcement procedures in question. He stated that when he became aware of the trial court's injunction order he directed the cessation of all enforcement activity on the Illinois-Indiana border until the Department received an interpretation of the order "to determine just what we could do to enforce the cigarette tax laws in the State of Illinois." Philip Mitchell, who was head of the Department's investigation division, was instructed to consult legal counsel in the Department of Revenue and in the Attorney General's office for interpretation of the order. Enforcement procedures were resumed about a week or 10 days later on the basis of guidelines which had been established in the course of such consultations. It was his recollection that when people were stopped and had cigarettes for their own use, they would be permitted to go on but that "we could proceed if there were over 50 cartons involved." He testified that he

was not directly familiar with either the Kelly or Dobrovolskis cases but conceded that he knew that people were being stopped and automobiles were being confiscated. He stated, however, that he believed that the Department's activities in this regard were proper and not in violation of the injunction order.

Philip Mitchell, who was manager of the investigation division of the Illinois Department of Revenue, testified that after discussing the trial court's injunction order with the Director he consulted the Attorney General's office, which interpreted the injunction order as permitting the Department to proceed in those cases where "there was a substantial number of cigarettes and if there were a substantial number of different brands." The Department was further advised by the Attorney General's office that possession of 50 cartons of unstamped cigarettes would constitute probable cause for arrest. This number was subsequently reduced to 30 after further discussion with an assistant Attorney General. Revenue agents were then instructed that persons who brought in less than 30 cartons of unstamped cigarettes for their own use were to be given tax slips and told they had five days in which to make remittance of use tax to the Department of Revenue. He also stated that he did not understand how certain parts of the injunction order were to be interpreted or implemented—in particular, how the Department was to determine whether a person was bringing the cigarettes into Illinois for resale and what the term "for their own use" meant. He stated that records of the Department indicated that during the period April 25, 1974, to November, 1975, approximately 1,400 persons were observed purchasing cigarettes in Indiana for transportation to Illinois, of which 400 were stopped and only 31 were arrested. He further testified that when the appellate court announced its decision on November 6, 1975, affirming the trial court's injunction order, the Department ceased the enforcement procedures in question and did not stop any cars thereafter.

An assistant Attorney General, who was chief of the criminal justice division, testified for the defense that: "I advised the Department of Revenue officials that if they observe a person importing a quantity of fifty or more cartons of cigarettes of more than one brand, that they would have probable cause to arrest and could do so consistent with the order of the court." The witness stated that he had made that determination on the basis of his interpretation of the statute and "the inference derived from the quantity and multiple brands, that the cigarettes imported were not for one's own use."

Several other investigators employed by the Department of Revenue who were called as witnesses under section 60 testified that they had initially been instructed that when they saw a large quantity of cigarettes being placed in a car in Indiana they were to follow the car to Illinois and stop it; they were then to ask to see the cigarettes, and if the cigarettes did not bear an Illinois tax stamp they were to ascertain what was to be done with them; if the purchaser said the cigarettes were for his own use, a tax slip was to be issued; but if the cigarettes were not for the purchaser's own use, he would be arrested. This procedure was then modified to provide that transportation into Illinois of 50 or more cartons of unstamped cigarettes of multiple brands would create a presumption that the cigarettes were brought in for sale and would constitute probable cause for arrest. The minimum number of cartons necessary to create the presumption was later reduced to 30. However, there was also testimony to the effect that arrests were made on the basis of the circumstances of each case. In some instances persons who brought in more than 30 cartons were given tax slips and not arrested if the agent was satisfied that the cigarettes had been brought in for the purchaser's own use. In other instances, persons with less than 30 cartons were arrested when the agent determined that cigarettes had been brought into Illinois for sale and not for the purchaser's own use. One agent testified that in several instances they

had received authority from the Department to make arrests when they observed the same party making purchases of large quantities of cigarettes in Indiana more than once or twice a week even though the purchaser might not have more than 30 cartons in his possession at the time his car was stopped.

At the conclusion of the trial, Robert H. Allphin, Philip Mitchell, three Department of Revenue investigators and the assistant Attorney General who had rendered advice to the Department were each found guilty of contempt for violation of the court's injunction order. Defendants Allphin and the three investigators were each fined $1,000 and sentenced to 10 days in the Cook County jail. Defendant Mitchell was fined the same amount but sentenced to 20 days. The assistant Attorney General was fined $2,000. After disposition of various post-trial motions, however, the court vacated the judgments entered against the three investigators and the assistant Attorney General for the reason that they had not been named in the petition for rule to show cause or the rule itself. Defendants Allphin and Mitchell filed notice of appeal to the appellate court, which granted a stay of execution of judgment pending the appeal, and we subsequently allowed a direct appeal to this court.

It is apparent that the proceedings in this case were in the nature of criminal contempt in which the penalties imposed were purely punitive in nature. (*Gompers v. Buck's Stove & Range Co.* (1911), 221 U.S. 418, 55 L. Ed. 797; *County of McLean v. Kickapoo Creek, Inc.* (1972), 51 Ill. 2d 353; *People ex rel. Chicago Bar Association v. Barasch* (1961), 21 Ill. 2d 407.) The petition for rule to show cause alleged willful violation of the court's injunction order, and the trial court expressly found defendants guilty of such willful violation in its order imposing the fines and jail sentences. In criminal contempt proceedings it is necessary that guilt be proved beyond a reasonable doubt. (*Barasch.*) Accordingly, the dispositive issue before

us on this appeal is whether the evidence establishes beyond a reasonable doubt that defendants were guilty of willful violation of the injunction order. In our view, it does not.

A pertinent factor which must be considered is the specificity of the injunction order. Section 3—1 of the Injunction Act (Ill. Rev. Stat. 1973, ch. 69, par. 3—1) provides in pertinent part: "Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; ***." The foregoing language was taken from Rule 65(d) of the Federal Rules of Civil Procedure (Fed. R. Civ. Pro. 65(d)). The purpose of the rule was succinctly stated by the Supreme Court in *International Longshoremen's Association, Local 1291 v. Philadelphia Marine Trade Association* (1967), 389 U.S. 64, 76, 19 L. Ed. 2d 236, 245, 88 S. Ct. 201, as follows: "The judicial contempt power is a potent weapon. When it is founded upon a decree too vague to be understood, it can be a deadly one. Congress responded to that danger by requiring that a federal court frame its orders so that those who must obey them will know what the court intends to require and what it means to forbid. *** The most fundamental postulates of our legal order forbid the imposition of a penalty for disobeying a command that defies comprehension." Subsequently, in *Granny Goose Foods, Inc. v. Teamsters Local 70* (1974), 415 U.S. 423, 444, 39 L. Ed. 2d 435, 453, 94 S. Ct. 1113, the court stated: "As the fine imposed in this case exemplifies, serious penalties can befall those who are found to be in contempt of court injunctions. Accordingly, one basic principle built into Rule 65 is that those against whom an injunction is issued should receive fair and precisely drawn notice of what the injunction actually prohibits." Courts of this State have likewise held that an injunction order

cannot support a finding of contempt unless it sets forth with certainty, clarity and conciseness precisely what actions are enjoined. As was stated in *People v. Wilcox* (1955), 5 Ill. 2d 222, 228: "Punishment for contempt has been described as a drastic remedy and to the end that individual liberty be protected from possible abuse of the inherent power of the courts to so proceed, it is required that the mandate of the court must be clear before disobedience can subject a person to punishment." See also *City of Kankakee v. New York Central R.R. Co.* (1944), 387 Ill. 109; *Paschen Contractors, Inc. v. Burrell* (1973), 14 Ill. App. 3d 748; *Hoffmann v. Hoffmann* (1965), 59 Ill. App. 2d 459; *Centennial Laundry Co. v. West Side Organization* (1965), 55 Ill. App. 2d 406, *aff'd,* 34 Ill. 2d 257.

In our opinion, the injunction order in this case was not so specific and clear as to be susceptible of only one interpretation. The order enjoined the defendants from enforcing sections 9c and 18 of the Cigarette Tax Act against individuals transporting cigarettes into Illinois "for their own use and not for sale." The term "own use" is not found in either the Cigarette Tax Act or the Cigarette Use Tax Act, and its meaning is less than clear. For example, does "own use" mean the same as "use" as defined by the relevant statutes, or was it intended to have a more limited meaning such as "personal consumption"? Would a person who purchases cigarettes to give away, or a person who is reimbursed for purchasing cigarettes for others be considered as having purchased cigarettes for his "own use"? More significantly, perhaps, the injunction order contemplated that the Cigarette Tax Act could and would continue to be enforced against individuals transporting cigarettes "for sale." As is indicated by the trial court's response to the petition for instructions filed by the defendants, it was apparently intended that the Department could continue to stop cars when persons were observed purchasing cigarettes in Indiana and transporting

them into Illinois. Agents of the Department, however, would have to proceed at their own risk in determining whether it would be permissible to draw inferences regarding personal use or sale from the quantity and number of different brands of cigarettes being transported. We note that the order did not specifically prohibit the drawing of such inferences, nor did it suggest that revenue agents who stopped an individual transporting large quantities of unstamped cigarettes would have to accept as conclusive that individual's word that the cigarettes were for his own use.

The record establishes that, when the injunction order was first issued, the defendants ceased all of the enforcement procedures in question on the Illinois-Indiana border and resumed them only in accordance with guidelines arrived at through consultation with the legal staff of the Department of Revenue and the Attorney General's office. The defendants also sought clarification of the injunction order by their petition for instructions filed in the trial court, and when no clarification was forthcoming, they continued the enforcement activity in accordance with the advice given by legal counsel. There was no evidence that during the pertinent period of time sections 9c and 18 of the Cigarette Tax Act were applied against persons who were believed to have brought cigarettes into Illinois for their own use. Instead, the record reflects an attempt by the Department of Revenue to enforce those sections against persons who, on the basis of various circumstances, including the quantity and number of brands of cigarettes, were supsected of transporting cigarettes into Illinois for sale. We note also that the enforcement procedures in question were immediately terminated when the appellate court announced its decision affirming the trial court's injunction order. In our opinion, the record before us does not establish beyond a reasonable doubt that defendants willfully violated the injunction order.

516

We think it appropriate to emphasize that in reaching the foregoing conclusions, we express no opinion whether the trial court and appellate court correctly construed the Cigarette Tax Act and the Cigarette Use Tax Act, nor do we consider the validity and enforceability of any particular sections of those acts. Likewise, no opinion is expressed as to whether the enforcement techniques followed by the Department in this matter were proper and in accordance with law. Our holding is limited to the narrow question of whether the evidence established that defendants were guilty of contempt.

For the reasons above stated we hold that the evidence did not establish beyond a reasonable doubt that defendants willfully violated the trial court's injunction order. Accordingly, the judgment of the trial court finding defendants guilty of contempt and imposing fines and jail sentences is reversed.

*Judgment reversed.*