THE VILLAGE OF LAKEMOOR, Plaintiff-Appellee, v. FIRST BANK OF OAK PARK, Trustee, *et al.*, Defendants-Appellants.—FRITZSCHE INDUSTRIAL PARK, INC., *et al.*, Plaintiff and Counterdefendant-Appellant, v. THE VILLAGE OF LAKEMOOR *et al.*, Defendant and Counterplaintiff-Appellee.

Second District   Nos. 84—0469, 84—0470 cons.

Opinion filed July 23, 1985.—Rehearing denied October 4, 1985.

36

Marena L. McPherson, of Abraham N. Goldman & Associates, of Chicago, for appellants.

Zukowski, Poper, Rogers & Flood and Michael C. Poper, both of Crystal Lake, for appellee.

JUSTICE SCHNAKE delivered the opinion of the court:
This is an appeal from two unrelated contempt orders issued by the circuit court of McHenry County against Fritzsche Industrial Park, Inc. (Fritzsche). In appeal No. 84—0470, Fritzsche was ordered to hook up nine of its industrial buildings to the village of Lakemoor's (village's) sewage disposal system. In appeal No. 84—0469, Fritzsche

was ordered to remove two of its own sewer disposal tanks from its property. Fritzsche was found in contempt as to both orders and fined. On appeal, Fritzsche questions the validity of both orders.

We begin by setting forth the facts in appeal No. 84—0470. Fritzsche is an Illinois corporation and the owner of Fritzsche Industrial Park, which consists of a large tract of land and nine multiple-use buildings. Lakemoor is a municipal corporation which operates a sewer disposal system pursuant to section 11—141—1 *et seq.* of the Illinois Municipal Code (Ill. Rev. Stat. 1983, ch. 24, par. 11—141—1 *et seq.*).

On August 30, 1979, Fritzsche filed a complaint for declaratory judgment asking that several of the village's sewer ordinances be declared to be arbitrary, unreasonable and void. The village counterclaimed for breach of contract based on Fritzsche's written agreement to hook up to the village's sewer system within 90 days of the date that the system became available to it. The village asked for $44,000 in sewer usage and connection fees and for a mandatory injunction ordering Fritzsche to hook up to its system. The matter was set for trial on July 13, 1982.

On July 15, 1982, after three days of testimony, the trial was continued to August 24, 1982. At this point Fritzsche had not finished presenting its case in chief, although it is disputed how many witnesses remained to be called. On July 19, 1982, without prior motion of either party, the court issued a mandatory injunction ordering Fritzsche to hook up to the village's sewer system by September 1, 1982, and to pay all remaining hook-up and inspection fees. This order specifically reserved the question of the sewer usage fees claimed by the village in its counterclaim.

Before the case could continue on August 24, 1982, Herbert Fritzsche, the president of Fritzsche, sent an affidavit to the trial judge, Judge Roland A. Herrmann, alleging that the judge was biased and prejudiced against Fritzsche. The affidavit also contained numerous and repeated derogatory statements equating the judge to a communist and questioning his loyalty to the United States Constitution. On August 31, 1982, Judge Herrmann recused himself and declared a mistrial.

The case was reassigned to Judge Leonard Brody, who, on October 8, 1982, ordered Fritzsche to comply with Judge Herrman's prior mandatory injunction. Judge Brody refused to hear Fritzsche's arguments that the prior order was improper and void. On October 29, 1982, Judge Brody found Fritzsche in contempt of the court's prior orders and fined it $50 per day until it complied. On November 12,

1982, Judge Brody stayed the fine until November 22, 1982.

On December 10, 1982, before the $50-a-day fine was reinstated, Fritzsche appealed. The appeal was dismissed by this court on November 7, 1983, for lack of a final judgment. On April 16, 1984, Judge Brody again held Fritzsche in contempt and fined it $15,000. This fine was figured at $50 per day from November 22, 1982, the date the fine should have been reinstated, to March 30, 1984, the date the court found that Fritzsche had hooked up its last building to the village's sewer system. (The fine actually totaled $24,600, but was reduced by the court to $15,000.) On May 4, 1984, the court further awarded the village $4,500 in attorney fees. This appeal followed.

■■ On appeal Fritzsche argues that Judge Brody erred in holding it in contempt of Judge Herrmann's July 19, 1982, mandatory injunction order in that, (1) the order was vitiated by Judge Herrmann's later declaration of a mistrial, and (2) the order was entered before Fritzsche had completed its case in chief and, therefore, violated its due process rights.

A mistrial vitiates all prior proceedings and, in legal effect, is equivalent to no trial at all. (*Papgeorgiou v. F. W. Woolworth Co.* (1978), 66 Ill. App. 3d 873; *Haywood v. Swift & Co.* (1964), 53 Ill. App. 2d 179.) The previous trial proceedings are completely erased as if they had never taken place, and both the parties and the case are returned to the pretrial stage. (*Merklin v. Philadelphia Suburban Water Co.* (1976), 239 Pa. Super. 229, 361 A.2d 754. Accord, *People v. Henderson* (1976), 36 Ill. App. 3d 355.) Judge Herrmann's mandatory injunction, which was entered after three days of trial, was, therefore, vitiated by his declaration of a mistrial.

The village contends that its counterclaim was litigated as a separate claim and that the court entered a separate judgment on it based on the village's pretrial summary judgment motion. The village argues, therefore, that the mandatory injunction was a pretrial order and was not nullified by the mistrial.

It is clear from the record, however, that the injunction was not a pretrial order. As the village readily admits, the injunction was entered only after three days of trial and was, in fact, based upon testimony presented at trial. Therefore, regardless of whether the injunction was in response to a pretrial motion, it was entered after the trial began and was voided when the trial upon which it was based was terminated.

■■ The village also argues that Fritzsche is estopped from denying the validity of the contempt order because it executed an appeal bond securing payment of the judgment. However, the general rule

upon which the village relies, that when a judgment is recited in an appeal bond the parties are estopped from questioning the existence or validity of the judgment (18 Ill. L. & Prac. *Estoppel* sec. 6 (1956)), is applicable only to collateral attacks on a judgment. Thus, in an action to recover on the appeal bond, the principal and sureties are estopped from questioning the validity of the judgment. The rule is not applicable to the direct appeal of a judgment as in the instant case. *Brown v. Hamsmith* (1927), 247 Ill. App. 358.

We find, therefore, that the circuit court erred in holding Fritzsche in contempt based on Judge Herrmann's July 19, 1982, injunction.

We next turn to the facts in appeal No. 84—0469. On January 22, 1982, the village filed a complaint in nuisance against Fritzsche asking for an injunctive relief to compel Fritzsche to remove certain refuse from its property. The parties then entered into an agreed order which stated that Fritzsche would "remove all stoves, refrigerators and *solid refuse* from the pond area on the subject premises on or before June 30, 1982, whether [sic] permitting." (Emphasis added.)

On October 8, 1982, the circuit court found Fritzsche in contempt for failing to remove certain refuse which included two large steel sewage disposal tanks. The matter was then continued for 60 days. On December 8, 1982, the court again found Fritzsche in contempt and ordered it to remove the sewage disposal tanks by December 23, 1982, and all other remaining refuse by December 10, 1982. On December 28, 1982, the court, for the third time, found Fritzsche in contempt and fined it $500 based on Fritzsche's admission that the sewage disposal tanks had not been removed. The court then gave Fritzsche an additional 10 days to remove the tanks.

Thereafter, Fritzsche filed an appeal of the trial court's three prior contempt orders. This appeal was also dismissed on November 7, 1983, for lack of a final judgment. On April 16, 1984, the circuit court again found Fritzsche in contempt of court for refusing to remove the sewage disposal tanks and fined it an additional $1,000 plus $25 per day for each day the tanks remained unmoved after May 1, 1984. On May 4, 1984, the court awarded the village $4,500 for attorney fees. This appeal followed.

■■ Fritzsche's first argument on appeal is that it was a violation of Fritzsche's due process rights for the court to order it to remove the sewage disposal tanks. Fritzsche reasons that since neither the agreed order nor the petition for a rule to show cause specifically mentioned the sewage disposal tanks, the issue of whether the tanks should be removed was not properly before the court in a proceeding

to enforce the agreed order. We disagree.

An agreed order is a written agreement between the parties and is to be interpreted as any other contract. (*Clark v. Standard Life & Accident Insurance Co.* (1979), 68 Ill. App. 3d 977; *Carvallo v. Carvallo* (1978), 62 Ill. App. 3d 394.) The agreed order here required Fritzsche to remove "solid refuse" from the pond area of its property. In order to determine whether Fritzsche had complied with the agreed order, the court had to determine whether the sewage disposal tanks were "solid refuse" within the meaning of the term as it was used in the agreed order. The issue of whether the sewage disposal tanks were within the terms of the agreed order, therefore, was properly before the court.

■ Fritzsche also argues that the trial court erred on December 28, 1982, when it refused to allow Fritzsche to introduce evidence or make an offer of proof on the issue of whether the sewage disposal tanks were refuse. Fritzsche reasons that since the court's order of December 8, 1982, was the first order to specifically state that the sewage tanks should be removed, the December 28, 1982, hearing was the first hearing at which the issue of the tanks was before the court on a properly noticed motion.

For the reasons already stated, however, the issue of whether the sewage tanks should have been removed as "solid refuse" under the agreed order was properly before the court at its first hearing on October 8, 1982. The record shows that on that date the court heard evidence presented by both sides on the issue of the tanks. The court found the tanks to be refuse and verbally ordered Fritzsche to remove the tanks. By December 28, 1982, the issue of whether the tanks were refuse had already been decided and the only issue before the court was whether the tanks had actually been removed. While a trial judge has no right to refuse an offer of proof, in light of the fact that Fritzsche was attempting to challenge an earlier ruling, any error was, at best, harmless. *In re Grand Jury Investigation of Swan* (1981), 92 Ill. App. 3d 856, 862.

■ Fritzsche's third argument on appeal is that the court erred in entering a permanent mandatory injunction ordering it to remove the sewage disposal tanks because no motion for such relief had been made and because no hearing was held on the issue.

Fritzsche's argument, however, misinterprets the trial court's orders. The trial court had never entered a permanent mandatory injunction for no injunction was necessary after Fritzsche agreed in the agreed order to clean up its pond area. What the trial court did, after hearing, was to find Fritzsche in contempt for failing to remove the

tanks, fine Fritzsche, and order him to comply with the agreed order. The trial court had authority to take these actions because all courts are vested with the inherent power to punish for contempt. *In re G.B.* (1981), 88 Ill. 2d 36, 41, *cert. denied* (1982), 456 U.S. 963, 72 L. Ed. 2d 487, 102 S. Ct. 2041; *In re Baker* (1978), 71 Ill. 2d 480, 484.

■ Fritzsche's fourth argument on appeal is that there was insufficient evidence upon which to order the tanks removed as a nuisance. As stated previously, however, the issue before the court was not whether the sewage disposal tanks were a nuisance, but whether the tanks were "solid refuse" under the agreed order.

While a trial court's finding of fact is always subject to review, this court will not disturb it and substitute its own opinion unless the trial court's finding is manifestly against the weight of the evidence. The basis for this rule is the recognition that, especially where the testimony is contradictory, the trial judge, as the trier of fact, is in a position superior to this court to observe the conduct of the witnesses while testifying, to determine their credibility, and to weigh the evidence and determine the preponderance thereof. *Nibco, Inc. v. Johnson* (1983), 98 Ill. 2d 166, 173-74; *Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356.

The evidence showed that the two steel sewage disposal tanks were purchased in 1971 from the city of Beloit, Wisconsin, as part of a sewage system Fritzsche planned to install on its property. The system was not installed due to the village's decision to install its own sewage disposal system and Fritzsche thereafter allowed the tanks to sit unprotected, collecting water and rusting for 11 years. The condition of the tanks was shown by three photographs introduced by the village. Fritzsche presented the testimony that the system, with minor repairs, was still operable, but did not attempt to introduce any evidence on the current value of the tanks.

Based on the above evidence the court found that the tanks were "refuse" and ordered them removed. We cannot say that this finding was against the manifest weight of the evidence and, therefore, we do not reverse its findings.

■ Further, we note that the village introduced into evidence three pictures of the tanks showing their condition at the time of the hearing. These pictures, which were a large part of the village's case, are not included in the record on appeal. It is a basic principle of appellate practice that a party who prosecutes an appeal has the duty of presenting to the court of review everything necessary to decide the issues on appeal. (*Marshall E. Winokur, Ltd. v. Shane* (1980), 89 Ill. App. 3d 551, 552.) Where the determination on appeal of whether a

particular decision of the lower court constituted error depends on evidence, and the record on appeal does not show or purport to show all pertinent evidence on which the decision is based, it will be presumed by the reviewing court that the evidence omitted would support the decision of the lower court. *King v. City of Chicago* (1964), 53 Ill. App. 2d 484, 487.

■ Fritzsche's fifth argument on appeal is that the village is estopped from bringing this action by reason of the fact that it allowed Fritzsche to leave these tanks in their present location for 11 years. Detrimental reliance on the conduct of another, however, is an essential element of equitable estoppel. (*Slavis v. Slavis* (1973), 12 Ill. App. 3d 467, 473.) Fritzsche has failed to show how it relied on the village's inaction to its detriment. Mere passage of time does not bring into effect the doctrine of equitable estoppel. *In re Estate of Neirinck* (1978), 62 Ill. App. 3d 189, 192.

■ Fritzsche's sixth argument on appeal is that the court erred in finding Fritzsche in contempt on October 8, 1982, and December 8, 1982. Fritzsche contends that it cleaned up all the refuse in a timely fashion and that these two contempt findings were based solely on its failure to remove the sewage disposal tanks. Therefore, Fritzsche reasons, because the trial court's orders prior to December 8, 1982, required it to remove "refuse" but did not specifically refer to the tanks, the court's prior orders cannot support a finding of contempt under *O'Leary v. Allphin* (1976), 64 Ill. 2d 500, due to their ambiguity.

While we do not disagree with the legal principles relied on by Fritzsche, we find its argument unconvincing because it is clear from the record and Fritzsche's own admissions that Fritzsche had not cleaned up the other refuse and that the trial court's contempt orders were not based solely on Fritzsche's failure to remove the sewage disposal tanks.

At the October 8, 1982, hearing, the village introduced evidence that Fritzsche had not removed stoves, mattresses, roofing material and other debris, and that Fritzsche had primarily tried to bury the refuse rather than remove it as required by the agreed order. Additionally, Robert Fritzsche, Fritzsche's maintenance man, admitted that some of the refuse, including certain roofing material, had not been picked up. Fritzsche, in fact, concedes in another portion of its appellant's brief that "contempt may have been technically entered on October 8, 1982, for other reasons [than the tanks], such as not completing the pond area clean up."

Similarly, at the December 8, 1982, hearing Thomas Dvorak, the

village's chief of police, testified that there was still metal garbage on the property and that the property appeared in basically the same condition as it had prior to October 8, 1982. Further, William Fritzsche admitted that there was still half a truck load of refuse to be removed on December 8, 1982, and the court's contempt order required Fritzsche to remove the remaining refuse, other than the tanks, by December 10, 1982. Therefore, the first two contempt orders of October 8, 1982, and December 8, 1982, were not based solely on Fritzsche's failure to remove the sewage disposal tanks, and any ambiguity in the orders in regard to the tanks was, at best, harmless.

We find, therefore, that the trial court did not err in finding Fritzsche in contempt on October 8, 1982, December 8, 1982, or December 28, 1982.

■■■ Lastly, we turn to the issue of attorney fees. An appropriate remedy, in either a civil or criminal contempt case, is to require the contumacious party to bear the reasonable attorney fees of the contempt proceeding. (*Frank B. Hall & Co. v. Payseur* (1981), 99 Ill. App. 3d 857; *47th & State Currency Exchange, Inc. v. B. Coleman Corp.* (1977), 56 Ill. App. 3d 229.) The party seeking such fees, however, must present evidence to show the reasonableness of the requested fees. (*Fiorito v. Jones* (1978), 72 Ill. 2d 73.) The usual practice is for the attorney to submit detailed records as to the hours spent. *In re Marriage of Jacobson* (1980), 89 Ill. App. 3d 273.

In the instant case the village's attorney did submit a detailed affidavit of his time. The affidavit, however, did not break down the time as to which of the two cases it applied to. Since we have reversed the trial court's finding of contempt in the first case (appeal No. 84—0470), the award of attorney fees in that case must also be reversed and the cause remanded for a determination of the reasonable attorney fees as to the second case (appeal No. 84—0469) only.

A question is also raised as to whether the trial court can, in its discretion, award the village attorney fees for Fritzsche's prior appeals to this court. Relatively few courts have addressed this issue, and their answers are conflicting. (See Annot., 43 A.L.R.3d 793, 805-06 (1972).) We find that we need not reach this issue, however, because the village, in failing to request such fees, has waived any claim for them.

The proper court to determine the appropriateness of awarding attorney fees on appeal is the appellate court which hears the appeal. (See *Crane v. Gas Screw Happy Pappy* (7th Cir. 1966), 367 F.2d 771, *cert. denied* (1967), 386 U.S. 959, 18 L. Ed. 2d 108, 87 S. Ct. 1029. Contra, *Schauffler v. United Association of Journeymen* (3d Cir.

1957), 246 F.2d 867.) It appears from the present record and this court's prior opinion in this cause that the village did not request such fees during the prior appeals and, therefore, waived any possible right to such fees. Similarly, the village has waived any possible claim for attorney fees as to this appeal by failing to request them.

For the reasons stated above, this cause is affirmed in part, reversed in part, and remanded for a determination of the reasonable attorney fees due the village in No. 84—0469.

Affirmed in part, reversed in part, and remanded with directions.

NASH, P.J., and STROUSE, J., concur.