THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GWENDOLYN EVANS, Defendant-Appellant.

First District (3rd Division)   No. 86—2144

Opinion filed January 13, 1988.

Paul P. Biebel, Jr., Public Defender, of Chicago (Robert D. Glick, Assistant Public Defender, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, and Terence M. Madsen and Michele I. Lavin, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

Defendant Gwendolyn Evans appeals from an order of the trial court finding her in contempt of court and sentencing her to two consecutive weekends in jail and six months' probation. On appeal, Evans contends that the evidence was insufficient to prove beyond a reasonable doubt that she was guilty of criminal contempt of court.

Evans was owner and president of Chicago Equitable National Mortgage Corporation, a company she founded to engage in the business of obtaining mortgages for purchasers of residential and commercial real estate. On October 7, 1985, the Illinois Attorney General filed a complaint against Evans and Chicago Equitable pursuant to the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1985, ch. 121½, par. 261 *et seq.*). The complaint alleged that Evans made material misrepresentations to consumers, that Evans failed to put earnest money deposits in separate escrow accounts for the benefit of customers, that Evans failed to return earnest money when deals did not close, and that Evans failed to make any good-faith effort toward obtaining loans for customers. The complaint also

alleged that no lender had ever issued a loan commitment as a result of Evans' actions, that Evans had not closed a purchase transaction for any customer and that consumers lost thousands of dollars as a result of Evans' failure to obtain mortgages.

On October 7, 1985, the trial court entered an *ex parte* temporary restraining order (TRO) stating that defendants were restrained from removing any funds from any account of whatever nature, in any bank, held in the name of either defendant or for which either defendant was the named signatory. Citicorp was required to freeze three accounts in the name of defendants. On October 8, 1985, in response to the State's emergency motion, the trial court entered a TRO stating that defendants were temporarily restrained "from providing mortgages or any other financing" of whatever kind in the State of Illinois. The order also required Evans to notify, in writing, all consumers who had pending loan applications that defendants were so restrained.

On October 10, 1985, the State filed an emergency petition for a rule to show cause alleging that Evans violated the TRO by telling an employee of the Attorney General's office that Chicago Equitable could assist him in obtaining a mortgage. On December 11, 1985, the State filed a second rule to show cause alleging that Evans violated the court's TRO by cashing a $2,000 check on October 9, 1985, which she received from a customer to be used as the down payment and closing costs for the purchase of real estate. The trial court issued the rules to show cause and set hearing dates for both rules. On December 13, 1985, the trial court entered a preliminary injunction against both defendants which essentially repeated the restrictions imposed by the TROs.

After a hearing, the trial court discharged the first rule to show cause. At the hearing on the second rule, the following testimony was offered. Dorothy Sayles testified that she and her husband applied for a mortgage loan with defendants and provided Evans with a check for the application fee. The Sayles later received a letter from Evans stating an intent to fund the loan. The Sayles gave her a check for $2,000 on October 7, 1985, as earnest money toward the down payment and the closing fees for the transaction. Mrs. Sayles testified that she received a letter from Evans on October 11, 1985, stating that the business was ceasing operations. Mr. Sayles testified that Evans called him on November 19, 1985, and said that they would be closing on the mortgage he applied for during the following week. Evans telephoned Sayles again to reschedule the closing for the following week. Sayles testified that he asked for his money back

and that Evans hung up.

Additional evidence revealed that the check written by the Sayles for $2,000 was cashed by Evans at her bank on October 9, 1985. The Sayles attempted to stop payment of this check on October 15, 1985, but were informed by the bank that payment had already been made.

The trial court found Evans in contempt of court for failure to obey the TRO. The court held that her cashing of the Sayles' check on October 9 was an act in furtherance of the business of providing mortgages and in violation of the October 8 TRO. The trial court further held that the two telephone calls to Mr. Sayles on November 19 and 29 were also violations of the TRO, and based on these actions, Evans was held in contempt of court. In making its ruling, the trial court stated:

> "The providing of those services [mentioned in the TRO] is not an act which is singular in handing over money, that is mortgage money, or having a mortgage recorded. Providing mortgages is a service, which any portion of, which *** goes toward the end, is included in providing mortgages or any other financing of any other kind in the state. So as long as the defendant takes acts in furtherance of providing mortgages ***, it was a violation of the TRO."

The trial court sentenced Evans to a six-month term of probation and to serve two weekends in jail. She was also ordered to make restitution in the amount of $2,000 and to be "gainfully employed" during the period of probation. This appeal originally included a challenge to the order to make restitution and to be gainfully employed during probation. The trial court, however, has amended the terms of probation and has vacated the order to pay restitution and the requirement that Evans be gainfully employed. Accordingly, Evans has withdrawn this issue from consideration upon review.

On appeal, Evans maintains the TRO was impermissibly vague and did not fairly and precisely give her notice of what activity was prohibited. Evans also argues that it was not proved beyond a reasonable doubt that she willfully violated the TRO.

■ A defendant charged with criminal contempt of court must be found guilty beyond a reasonable doubt of a willful violation of the order. (*People ex rel. Hartigan v. Jansen* (1986), 151 Ill. App. 3d 208, 502 N.E.2d 1129.) A finding of contempt is a question of fact for the trial court, and a reviewing court will not disturb that finding unless the record reflects an abuse of discretion. *People ex rel. Hartigan v. Jansen* (1986), 151 Ill. App. 3d 208, 502 N.E.2d 1129.

■ The Illinois Code of Civil Procedure states that every order

granting an injunction and every restraining order "shall set forth the reasons for its entry; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." (Ill. Rev. Stat. 1985, ch. 110, par. 11—101.) Further, our supreme court has held that an injunction order cannot support a finding of contempt unless its sets forth with certainty, clarity, and conciseness precisely what actions are enjoined. (*O'Leary v. Allphin* (1976), 64 Ill. 2d 500, 356 N.E.2d 551.) In the present case, the TRO prohibited defendant from "providing mortgages or any other financing of whatever kind in Illinois."

■ We cannot agree that the TRO was vague, unclear, or susceptible to more than one interpretation. It was not necessary that the order specify every act leading up to the actual acquisition of the mortgage. Obtaining financing for the purchase of real estate is a process and we agree with the trial court that cashing the check and making phone calls regarding the closing of the deal were acts in furtherance of providing a mortgage or other financing. Therefore these acts were properly construed as acts of contempt. We do not agree that the TRO was too vague and unclear to specifically give Evans notice as to what conduct was prohibited. Based on the evidence in the record, we find that the State proved beyond a reasonable doubt that Evans willfully committed acts in violation of the TRO and for this reason the finding of contempt must be affirmed.

For the foregoing reasons the order of the circuit court of Cook County finding Gwendolyn Evans in contempt of court is affirmed.

Judgment affirmed.

WHITE, P.J., and FREEMAN, J., concur.